BOIES SCHILLER FLEXNER LLP
Sean P. Rodriguez (SBN 262437)
srodriguez@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

George F. Carpinello (*pro hac vice* forthcoming)
gcarpinello@bsfllp.com
30 South Pearl Street, 11th Floor
Albany, New York 12207
Phone: (518) 434-0600
Fax: (518) 434-0665

*Counsel for Qui Tam Plaintiff-Relator*
Omni Healthcare, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, the States of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, VIRGINIA, WASHINGTON, WISCONSIN; THE CITY OF CHICAGO, and THE CITY OF NEW YORK *ex rel.* OMNI HEALTHCARE INC.,<br><br>Plaintiffs,<br><br>*v.*<br><br>MCKESSON CORPORATION and ONCOLOGY THERAPEUTICS NETWORK CORPORATION,<br><br>Defendants. | Case No.<br><br>**OMNI HEALTHCARE, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL CALIFORNIA STATE BOARD OF PHARMACY TO COMPLY WITH SUBPOENA DUCES TECUM**<br><br>**Principal Case Pending in Eastern District of New York, Brooklyn Division Case No. 1:12-cv-06440-NG-ST**<br><br>Hearing Date: Unknown<br>Hearing Time: Unknown<br>Courtroom: Unknown<br>Judge: Unknown |

**NOTICE OF MOTION AND MOTION TO COMPEL**

**TO CALIFORNIA STATE BOARD OF PHARMACY AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that at as soon as the matter may be heard at a location to be determined by this Court, Plaintiff-Relator Omni Healthcare, Inc., will, and hereby does, move the Court for an Order compelling the California State Board of Pharmacy to comply with a subpoena. Pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, this motion seeks to compel third-party California State Board of Pharmacy to comply with the subpoena *duces tecum* that Plaintiff-Relator Omni Healthcare, Inc. served on it as part of the litigation styled *United States of America, et al., ex rel. Omni Healthcare Inc. v. McKesson Corporation, et al.*, which is currently pending in the United States District Court for the Eastern District of New York, Civil Action File No. 1:12-CV-06440-NG-ST, and to produce the documents and communications commanded by that subpoena. Pursuant to Local Rule 37-1(a), the undersigned counsel for Plaintiff-Relator Omni Healthcare, Inc. certify that they have met and conferred in good faith with counsel for the California State Board of Pharmacy in an effort to resolve this dispute without Court involvement but were unable to reach an agreement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of George F. Carpinello, the Court's records and files of this action, any matter of which the Court may take judicial notice, and any and all evidence and arguments that may be presented at or before the hearing on this motion.

Dated: March 24, 2021

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

By: /s/ Sean P. Rodriguez

SEAN P. RODRIGUEZ
Sean P. Rodriguez (SBN 262437)
srodriguez@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

George F. Carpinello (*pro hac vice* forthcoming)
gcarpinello@bsfllp.com
30 South Pearl Street, 11th Floor
Albany, New York 12207
Phone: (518) 434-0600
Fax: (518) 434-0665

*Counsel for Qui Tam Plaintiff-Relator*
Omni Healthcare Inc.

**TABLE OF CONTENTS**

I. BACKGROUND ........................................ 1

II. LEGAL STANDARD ........................................ 3

III. ARGUMENT ........................................ 3

A. Complaints, Investigation Files, Inspection Reports, and Related Communications with Regulated Entities (Request Nos. 1, 3, 4, 5, and 15) ........... 3

1. The Board has stated no rationale for applying the official information privilege, and there is none. ........................................ 4

2. The deliberative process privilege does not apply, and in any event does not permit categorical, indiscriminate withholding of documents. ........................................ 6

3. The work product doctrine has no application here. ........................................ 8

4. The requests are not overly broad, vague, or burdensome. ........................................ 8

5. The Subpoena does not call for "private medical information," and such information is subject to a protective order in any event. ................. 11

B. Documents Reflecting the Board's Communications with Healthcare Providers (Request Nos. 12 and 13) ........................................ 11

C. Documents Reflecting the Board's Policies, Requirements, and Knowledge on Pertinent Topics (Request Nos. 7, 8, 9, 10, and 11) ...................... 12

IV. CONCLUSION ........................................ 14

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. Fed. Bureau of Investigation*,
186 F.R.D. 21 (D.D.C. 1998)........ 10

*Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice*,
880 F.3d 473 (9th Cir. 2018) ........ 8, 13

*Assembly of the State of Cal. v. U.S. Dep't of Comm.*,
968 F.2d 916 (9th Cir. 1992) ........ 6

*Chism v. Cty. of San Bernardino*,
159 F.R.D. 531 (C.D. Cal. 1994)........ 5

*Dowell v. Griffin*,
275 F.R.D. 613 (S.D. Cal. 2011) ........ 4

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006)........ 9

*Hampton v. City of San Diego*,
147 F.R.D. 227 (S.D. Cal. 1993) ........ 4

*Hickman v. Taylor*,
329 U.S. 495 (1947)........ 8

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
976 F.2d 573 (9th Cir. 1992) ........ 8

*In re McKesson Gov't Entities Average Wholesale Price Litig.*,
264 F.R.D. 595 (N.D. Cal. 2009)........ 6, 7

*K.L. v. Edgar*,
964 F. Supp. 1206 (N.D. Ill. 1997) ........ 7

*Kelly v. City of San Jose*,
114 F.R.D. 653 (N.D. Cal. 1987)........ 4, 5

*Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*,
511 F.2d 192 (9th Cir. 1975) ........ 4, 5

*Miller v. Panucci*,
141 F.R.D. 292 (C.D. Cal. 1992)........ 4, 5

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975)........ 6, 7, 13

*Sanchez v. City of Santa Ana*,
936 F.2d 1027 (9th Cir.1990) ..... 4

*Soto v. City of Concord*,
162 F.R.D. 603 (N.D. Cal. 1995) ..... 4, 5

*U.S. ex rel. Ortiz v. Mount Sinai Hosp.*,
169 F. Supp. 3d 538 (S.D.N.Y. 2016) ..... 3

*United States v. Lee*,
No. 5:06-CR-0424, 2009 WL 1108697 (N.D. Cal. Apr. 24, 2009) ..... 10

*United States v. Richey*,
632 F.3d 559 (9th Cir. 2011) ..... 8

*United States v. Rozet*,
183 F.R.D. 662 (N.D. Cal. 1998) ..... 7

*V5 Techs. v. Switch, Ltd.*,
332 F.R.D. 356 (D. Nev. 2019) ..... 10

*Viacom Int'l, Inc. v. YouTube, Inc.*,
No. C-08-80211-MISC, 2009 WL 102808 (N.D. Cal. Jan. 14, 2009) ..... 3

*Williams v. C. Martin Co. Inc.*,
Civil Action No. 07-6592, 2014 WL 3095161 (E.D. La. 2014 July 7, 2014) ..... 3

**STATUTES**

31 U.S.C. § 3729 ..... 1

Cal. Gov't Code § 12651(a)(1) ..... 9

Cal. Gov't Code § 6260 ..... 11

**RULES**

Fed. R. Civ. P. 45(a)(1)(A)(iii) ..... 3

Fed. R. Civ. P. 45(e)(2)(A)(ii) ..... 3

Fed. R. Civ. P. 45(e)(2)(A) ..... 11

Fed. R. Evid. 501 ..... 4

**OTHER AUTHORITIES**

8 Wright & Miller, Fed. Prac. & Proc. § 2019 (3d ed.) ..... 3

## I. BACKGROUND

In the lead litigation, Omni alleges that Defendants McKesson and OTN (together, "Defendants" or "McKesson") engaged in a massive campaign of pharmaceutical fraud over the course of at least eight years (from 2005 to 2013), harvesting "overfill"[1] from vials of injectable medications, pooling that overfill, then creating prefilled syringes with the pooled medication and disseminating those syringes for use on unsuspecting patients. Harvesting overfill is illegal and unsafe because it involves reentering a vial that typically is made without preservatives and is meant for a single use, potentially introducing foreign substances into the drug and breaching its sterility. But overfill-based prefilled syringes were good for McKesson's bottom line. For example, for every ten vials of a given drug that it received from the manufacturer, it could sell eleven syringes. Those syringes were distributed to medical practices nationwide, used on unwitting patients, and subsequently billed to Medicare and state government payors (including Medi-Cal) for reimbursement.

Every such claim for payment was fraudulent and should not have been paid. On that basis, in 2012, Omni sued McKesson on behalf of the United States, 30 states, two cities, and the District of Columbia under the federal False Claims Act (31 U.S.C. § 3729 *et seq.*) and its state and local equivalents. The complaint was unsealed and served in April 2018, and discovery commenced the following year, after significant motion practice.

On October 27, 2020, to learn more about McKesson's scheme, Omni served a third-party subpoena *duces tecum* (the "Subpoena") on the California State Board of Pharmacy (the "Board"), commanding documents regarding the Board's inspections and investigations during the relevant time period, relevant communications with healthcare providers, and policies, requirements, and other knowledge regarding harvesting overfill and prefilled syringes. Declaration of George F. Carpinello ("Carpinello Decl."), ¶ 2, Ex. 1.[2]

---

[1] "Overfill" denotes the portion of liquid medication contained in a vial that exceeds the labeled dose amount. Overfill is included in the vial to ensure the administering physician is able to draw the full amount needed for a given injection. Medical practices are not charged for overfill, and overfill is meant to be discarded after a full dose has been drawn from the vial into the syringe.

[2] All exhibits identified herein are exhibits to the Carpinello Declaration.

In a letter dated November 24, 2020, the Board objected to every request, largely with boilerplate assertions, attaching as an exhibit the names and pharmacy license numbers of McKesson-related entities it identified. Carpinello Decl., ¶ 3, Ex. 2. Because of mail delays, however, Omni did not receive these objections until December 9, 2020, when counsel for the Board emailed a copy to Omni's counsel. Carpinello Decl., ¶ 3. On December 16, 2020, Omni met and conferred with the Board, and the Board agreed as a preliminary compromise to provide inspection reports and records of citations and fines. Carpinello Decl., ¶ 4. On December 22, 2020, the Board transmitted 30 pages of material consisting of "letters of admonishment" and records of citations and fines issued to McKesson-related entities, as well as some redacted inspection reports of McKesson-related entities "that are not part of an investigation or complaint." Carpinello Decl., ¶ 5, Ex. 3 at 2 (and attachments to letter). The redactions obscured Board findings that resulted in formal corrective action. Ex. 3 at 2.

Almost by definition, however, those limitations caused the Board to exclude from production the material likely to be responsive to the Subpoena. On January 11, 2021, Omni responded in writing, rejecting the Board's apparent view that its compliance with a ***civil subpoena*** was somehow constrained by ***public records laws***. Carpinello Decl., ¶ 6, Ex. 4. Omni and the Board met and conferred again on January 19, 2021, at which time the Board communicated that, in response to subpoenas, it "generally" asserts the official information privilege and the deliberative process privilege. Carpinello Decl., ¶ 7. The Board agreed to categorize the types of documents it had searched and collected and to log, by category, the particular reasons for its refusal to produce those documents. Carpinello Decl., ¶ 7.

The Board did not provide such a log. Instead, on January 29, 2021, the Board reissued another set of objections, again in largely boilerplate terms and not condensed from the initial objections it had served on November 24, 2020. Carpinello Decl., ¶ 8, Ex. 5. Omni and the Board met and conferred again on February 22, 2021, and Omni understood that the Board would follow up and confirm whether it had produced all that it would produce. Carpinello Decl., ¶ 9. In the three weeks that followed, however, the Board did not follow up. On March 12, 2021, counsel for Omni wrote to the Board's counsel, asking the Board to state its position regarding the Subpoena

by March 15, 2021. Carpinello Decl., ¶ 10, Ex. 6. On March 19, 2021, the Board's counsel stated that, while they would consider de-redacting some portions of some inspection reports, they maintained all other objections and would not produce any additional material. Carpinello Decl., ¶ 10, Ex. 6. Omni advised that it would move to compel production. Carpinello Decl., ¶ 10, Ex. 6.

## II. LEGAL STANDARD

"Rule 45 authorizes issuance of a subpoena to command a nonparty to produce designated documents, electronically stored information, or tangible things in its possession, custody or control." *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C-08-80211-MISC, 2009 WL 102808, at *2 (N.D. Cal. Jan. 14, 2009) (citing Fed. R. Civ. P. 45(a)(1)(A)(iii)). The scope of discovery that can be obtained from a nonparty is the same as can be obtained from a party. *Id.* "A nonparty withholding subpoenaed information on the grounds of privilege or otherwise subject to protection must serve a privilege log describing the nature of the documents withheld so that the other parties may assess the privilege or protection claimed." *Id.* at *3 (citing Fed. R. Civ. P. 45(d)(2)(A)(ii), since recodified at Fed. R. Civ. P. 45(e)(2)(A)(ii)).

## III. ARGUMENT

### A. Complaints, Investigation Files, Inspection Reports, and Related Communications with Regulated Entities (Request Nos. 1, 3, 4, 5, and 15)

To probe the details of McKesson's fraudulent conduct in California, Omni made the same requests of the Board that litigants routinely make in similar circumstances: It sought complaints, investigation files, inspection reports, and related communications pertaining to McKesson and similarly-situated drug distributors. The requests are plainly relevant to Omni's claims of fraud, targeted, precise, and easy for the Board to search and produce. Indeed, it is commonplace in False Claims Act and other litigation for parties to subpoena government agencies. *See, e.g.*, *U.S. ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538 (S.D.N.Y. 2016); *Williams v. C. Martin Co. Inc.*, Civil Action No. 07-6592, 2014 WL 3095161, at *4–5 (E.D. La. 2014 July 7, 2014); *see also* 8 Wright & Miller, Fed. Prac. & Proc. § 2019 (3d ed.) (Oct. 2020 update) ("The discovery rules apply to the United States—and to states and other governmental subdivisions and bodies—just as fully as they apply to any other person.").

The Board does not (and cannot) seriously dispute the relevance of the requests. Instead, in its objections, the Board dubiously asserts the official information privilege, deliberative process privilege, and work product doctrine. They also assert, with scant explanation, that the Subpoena's requests are overbroad, vague, and burdensome. None of the Board's assertions, however, can justify its resistance to the Subpoena.

**1. The Board has stated no rationale for applying the official information privilege, and there is none.**

Despite the Board's repeated citations to the California Constitution, the California Evidence Code, and California state court case law, "[a]ssertions of privilege in federal question cases are governed by federal common law." *Dowell v. Griffin*, 275 F.R.D. 613, 616 (S.D. Cal. 2011) (citing Fed. R. Evid. 501). The lead litigation is pending in federal district court and grounded principally in federal law. The Board's reliance on a recent state-court case, *Cal. State Board of Registered Nursing v. Johnson & Johnson et al.* (Ex. 5 at 3), and the California Evidence Code (Ex. 5 at 2) are thus doubly off-base: They are state authorities on matters of state law.

Even so, to whatever extent the Board (hypothetically) might rely on federal common law, no federal "official information" privilege could reach the circumstances here. For one thing, federal cases discussing an official information privilege most commonly involve parties seeking law enforcement personnel files,[3] not complaints, investigation files, inspection reports, or related communications with regulated entities. Regardless, to invoke the official information privilege, the withholding party is obligated to make a ***specific identification*** of the government or privacy interest threatened by disclosure of the subpoenaed material. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995); *see Kelly v. City of San Jose*, 114 F.R.D. 653, 670 (N.D. Cal. 1987).

The Board has all but disclaimed any specific interests that could be threatened by disclosure of the subpoenaed material, instead insisting that *all* documents pertaining to the

---

[3] *See, e.g.*, *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir.1990); *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975); *Dowell*, 275 F.R.D. at 616; *Hampton v. City of San Diego*, 147 F.R.D. 227, 230–31 (S.D. Cal. 1993); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly v. City of San Jose*, 114 F.R.D. 653, 662 (N.D. Cal. 1987).

Board's investigations and complaint process are *always* privileged under *all* circumstances. But "a general assertion that a[n] [agency's] internal investigatory system would be harmed by disclosure of the documents is insufficient" to justify noncompliance with a valid subpoena. *Chism v. Cty. of San Bernardino*, 159 F.R.D. 531, 534–35 (C.D. Cal. 1994). "[A] resisting party must specifically describe how disclosure of the requested documents in the particular case in question would be harmful." *Id.* (citing *Miller v. Panucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992)); *see Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975) (an agency claiming the official information privilege must "state with specificity the rationale of the claimed privilege"). The Board's highly generalized, sweeping assertion of the "official information" privilege seems to reflect an expansive view that the Board is categorically immune from all subpoenas in all circumstances. The case law, however, holds the contrary.

In addition, federal cases describing an official information privilege are most commonly civil rights cases *against* the government or its officers. But the opposite is true here: This is a case brought on behalf of the government against a regulated entity. California's interest is aligned with Omni, not McKesson. Disclosure of the subpoenaed documents inures to the Board's benefit, not to its detriment. The Board not only lacks a *specific* interest in withholding material; it lacks any interest in withholding at all.

A party invoking the official information privilege is also obligated to state in detail, in an affidavit or declaration,

> (1) an affirmation that the agency generated or ***collected the material in issue*** and has maintained its confidentiality; (2) a statement that the official has ***personally reviewed*** the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a ***carefully crafted protective order*** would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Soto*, 162 F.R.D. at 613 (emphases added); *see Kelly*, 114 F.R.D. at 670. Judging by its representations so far, however, the Board ***cannot attest to any of these necessary facts***. As for the first and second elements, the Board has already acknowledged that it has not searched for or collected responsive documents and, therefore, could not possibly have "reviewed the material in

question." *See* Ex. 5 at 9. This is apparently the Board's custom: It "generally" asserts the official information privilege before even endeavoring to collect or review responsive documents. Carpinello Decl., ¶ 7. As noted above, the third element cannot be asserted because the Board cannot make a "specific identification" of interests without having collected or reviewed any particular documents in the first place.

As for the fourth required element, there is a detailed protective order in place in the lead litigation. Omni shared a copy of that protective order with the Board on January 11, 2021, but the Board did not acknowledge it (either on the phone or in writing) in its follow-up correspondence. Ex. 4 (attachment to letter); *see* Ex. 5. And to the fifth point, setting aside its sole conclusory assertion about "the integrity of their investigations and disciplinary proceedings" (Ex. 5 at 3), the Board has not endeavored to explain what disclosures would be harmful to its operations or mission, nor why those interests might outweigh the heavy interest (including California's own interest) in identifying and recovering for massive fraud.

**2. The deliberative process privilege does not apply, and in any event does not permit categorical, indiscriminate withholding of documents.**

With almost no explanation, the Board asserts that it has withheld documents as to complaints, investigation materials, inspection reports, and related communications with regulated entities on the dubious basis that those documents are shielded by the deliberative process privilege. For any number of reasons, however, the deliberative process privilege has no application to the Subpoena's requests.

"The deliberative process privilege has been developed to protect 'the decision making processes of government agencies.'" *In re McKesson Gov'tl Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 600 (N.D. Cal. 2009) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). "In order to be protected by the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'" *Id.* (citing *Assembly of the State of Cal. v. U.S. Dep't of Comm.*, 968 F.2d 916, 920 (9th Cir. 1992). "Factual material generally is not considered deliberative . . . ." *Id.* at 601. The purpose of the privilege is to encourage "frank discussion of

legal or policy matters" by permitting some degree of confidentiality in sensitive exchanges of ideas. *Sears Roebuck*, 421 U.S. at 150.

Plainly, copies of complaints, investigative files, inspection reports, and related communications with regulated entities are purely factual and mundane, not deliberative. They do not reflect any "frank discussion of legal or policy matters," and revealing such materials of course would not cause "injury to the quality of agency decisions." *See id.* at 150–51. In its objections, the Board has issued rote recitations of the "deliberative process privilege," but it has not made a serious effort to show how the Subpoena calls for any predecisional, internal deliberative material.

Courts have gone to some lengths to prevent agencies from making such cavalier assertions of this "strictly confined" privilege. *McKesson Gov'tl Entities*, 264 F.R.D. at 601 (quoting *K.L. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997)). "Generally, the deliberative process may be invoked only by the agency head after personally reviewing the documents for which the privilege is asserted." *Id.* (citing *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998)). "That requirement was designed to deter governmental units from too freely claiming a privilege that is not to be lightly invoked . . . ." *Id.*

Necessarily, then, the privilege cannot be asserted without first searching for and collecting responsive documents and undertaking an actual review of those document by a high-ranking agency official. What is more, an assertion of the deliberative process privilege must be accompanied by a declaration from that high-ranking official stating

> 1) specific facts demonstrating why ***each document*** is 'deliberative' and 'predecisional,' 2) specific facts concerning: a) the degree and type of harm that would result from requiring production of each document; and b) what type of protective order would be necessary to reduce that harm or, alternatively, why a protective order would not reduce this harm; and 3) what ***portions of each document*** are deliberative and, if specific sections are purely factual, why those sections cannot be produced.

*Id.* at 602 (emphases added). Here, the Board has made clear that it has not even attempted to search for or collect the subpoenaed documents (Ex. 5 at 9), much less to present those documents to a high-ranking official for review or to detail specific justifications for invoking the privilege.

**3. The work product doctrine has no application here.**

As a tagalong point, the Board also repeatedly asserts the work product doctrine as a basis for withholding the subpoenaed documents. It cites no authority applying work product protection to a government regulatory agency responding to a third-party subpoena, and does not explain how the work product doctrine would operate differently from the other privileges it purports to invoke. The work product doctrine shields documents "prepared in anticipation of litigation . . . by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citations omitted). It "ensures that litigants cannot proceed 'on wits borrowed from the adversary,' and 'prevents exploitation of a party's efforts in preparing for litigation.'" *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 484 (9th Cir. 2018) (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring)); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992)). It is difficult to see, and the Board does not explain, how those principles could conceivably apply to the circumstances here.

**4. The requests are not overly broad, vague, or burdensome.**

The Board also asserts, with scant explanation, that the Subpoena's requests for complaints, investigation files, inspection reports, and related communications as to McKesson entities are "overly broad, vague, and burdensome." Ex. 5 at 3, 4, 5, 8. It states that, although it has already identified a list of regulated McKesson entities (and Omni has not suggested the list was inadequate), it "may not have identified ***all*** entities controlled by or affiliated with McKesson." Ex. 5 at 3 (emphasis added); *see* Ex. 2 (attachment to letter). That is hardly a basis for objection. The Board has an obligation to conduct a reasonable search in good faith for responsive documents. The speculative prospect that its good-faith production might ultimately be incomplete is not a valid reason to resist making any production at all.

The Subpoena also seeks complaints, investigative files, and inspection reports of (and related communications with) entities *other than McKesson* that were "engaged in creating, distributing or selling Pre-Filled Syringes containing any Oncology Drugs." Ex. 1, Subpoena

(Request No. 4). The Board objects, asserting that "it is hard to fathom how information about another licensee could result in relevant evidence against a McKesson entity."[4] Ex. 5 at 4-5.

The Board's position may reflect unfamiliarity with the underlying litigation. California is a real party in interest: Omni is suing McKesson on California's behalf pursuant to the California False Claims Act, Cal. Gov't Code § 12651(a)(1). It alleges that "Defendants, for the purpose of defrauding the California State Government, knowingly presented and/or caused to be presented false claims for payment or approval under Medicaid and other California State-funded programs . . . ." Ex. 7, Second Am. Compl. at 66, ¶ 264. Omni further alleges that "[t]he California State Government, unaware of the falsity, paid claims that it ***would not have paid had it known of Defendants' practices***." Ex. 7 at 67, ¶ 266 (emphasis added). In any event, "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt," though it is not here, "[t]he court should be permissive." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) (citation omitted).

The Board's inspections and investigations of other entities that engaged in harvesting overfill to create and distribute prefilled syringes may reveal whether the Board condoned or condemned the behavior. If the latter, then McKesson's deception was very likely ***material*** to the payment of false claims to the State of California. Materiality is a live issue in the underlying litigation. Omni is entitled to seek discovery pertaining to the Board's treatment of similar misconduct by other entities.

Despite the Board's characterization of the Subpoena, Omni has not demanded that the Board engage in an indiscriminate dragnet of millions of papers to find other entities that engaged in creating, distributing or selling prefilled syringes. The identities of other entities that harvested overfill are a matter of public knowledge—among them AmerisourceBergen Drug Corporation,

---

[4] The Board also asserts in passing that inspection reports of McKesson facilities can be more easily obtained from McKesson itself. Ex. 5 at 4. Unfortunately, as Omni has explained to the Board, that approach has been unsuccessful: McKesson's productions have been woefully inadequate.

Oncology Supply Company, and Medical Initiatives Inc.[5] *See* U.S. Dep't of Justice, *AmerisourceBergen Corporation Agrees to Pay $625 Million to Resolve Allegations That it Illegally Repackaged Cancer-Supportive Injectable Drugs to Profit From Overfill* (Oct. 1, 2018), https://www.justice.gov/opa/pr/amerisourcebergen-corporation-agrees-pay-625-million-resolve-allegations-it-illegally. Even setting aside publicly available information, it is not credible that the Board—a regulatory body responsible for health and safety in pharmacy practices—lacks any institutional awareness whatsoever about other entities that engaged in overfill harvesting, as it implies in its objections.

It is the Board's obligation to conduct a reasonable and diligent search for responsive documents, even if it cannot guarantee that it will ultimately find and produce every last scrap of responsive material. *United States v. Lee*, No. 5:06-CR-0424, 2009 WL 1108697, at *2 (N.D. Cal. Apr. 24, 2009) ("in the civil context, 'an individual served with a subpoena *duces tecum* has an obligation to conduct a reasonable search to ensure that non-privileged documents that are relevant or likely to lead to the discovery of admissible evidence'" (quoting *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 21, 38 (D.D.C. 1998)); *see V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366 (D. Nev. 2019) ("A person subpoenaed for the production of documents is under an affirmative duty to seek that information reasonably available to her."). But the Board has not even offered to take commonsense steps to honor the Subpoena, for example, to search for files pertaining to entities *known* to have engaged in similar conduct. Instead, it pleads ignorance and certain futility.

The Board's communications, in fact, seem not to acknowledge the Subpoena's legitimacy at all. The Board's December 22, 2020 letter treated the Subpoena ***as a public records request***, and produced very limited (and redacted) material accordingly. *See* Ex. 3. Omni responded to that

---

[5] The Board also complains that Omni did not list specific drugs that may have been used to create prefilled syringes. Omni does not understand how identifying particular drug names would be helpful for the Board's search for documents responsive to these requests: Harvesting overfill for prefilled syringes is illegal and unsafe with any drug. In any event, Omni understands that the drugs most likely involved in McKesson's overfill-harvesting scheme were Procrit, Aloxi, Aranesp, Neupogen, Taxotere, Kytril, Avastin, Rituxan, Xgeva, Zometa, and generic varieties of each.

letter, pointedly reminding the Board—with strings of case law—that the Subpoena was a legal command and that the authorities cited by the Board in its letter "shall not be deemed in any manner to affect . . . the rights of litigants . . . under the laws of discovery." Ex. 4 at 1 (quoting Cal. Gov't Code § 6260).

It is routine for government agencies to produce files on their regulated entities in civil litigation against those entities. The Board has given no reason to think it should not be expected to do the same in this case.

#### 5. The Subpoena does not call for "private medical information," and such information is subject to a protective order in any event.

The Board's initial objections suggested some concern regarding disclosure of "private medical information." Ex. 2 at 3. The Subpoena does not call for any medical information about any individual. Regardless, as the Board is aware, there is a protective order in effect in the lead litigation that expressly protects "information received in confidence from third parties" as well as "personally-identifiable medical information." Ex. 4 (attachment to letter).

### B. Documents Reflecting the Board's Communications with Healthcare Providers (Request Nos. 12 and 13)

Subpoena Requests 12 and 13 command documents "reflecting or relating to Communications with Healthcare Providers" regarding harvesting of overfill and prefilled syringes. In addition to the rote assertions of official information privilege, deliberative process privilege, work product doctrine, overbreadth, and privacy—all of which should be rejected for the reasons discussed above—the Board invokes the attorney-client privilege (without explanation) and observes that it "does not oversee healthcare providers, except pharmacies." Ex. 5 at 7-8.

Neither position required an objection. If responsive material is shielded by the attorney-client privilege, it may be withheld provided the Board produces a privilege log explaining the withholding. Fed. R. Civ. P. 45(e)(2)(A). And if the Board lacks documents responsive to these requests because it never communicates with healthcare providers other than pharmacies, then, of

course, there will be nothing to produce.[6]

Notably, however, the Board has not represented that it does not *communicate* with healthcare providers but rather that it does not *oversee* those entities. If the Board *has communicated* with healthcare providers regarding harvesting overfill or prefilled syringes—for example, to warn them about the serious risk to patient safety incurred by using prefilled syringes prepared from vial overfill—then it is not credible that the Board has no way to recollect or identify records of those communications, regardless of how their files are organized.

### C. Documents Reflecting the Board's Policies, Requirements, and Knowledge on Pertinent Topics (Request Nos. 7, 8, 9, 10, and 11)

Requests 7, 8, 9, 10, 11, and 14 command documents about Board policies, requirements, and knowledge regarding medication order forms; repackaging, compounding, and manufacturing; harvesting of overfill; and the safety and efficacy of prefilled syringes. As explained above, the Board's knowledge about (and positions on) these issues is directly relevant to proving illegality, materiality of fraud, and scienter. For example, if the Board understands governing law to require that drug order forms be accompanied by particular patient names, that will tend to show that McKesson's order forms (which did not require patient names) were illegal, and consequently, that claims to Medicare and California government payors for prefilled syringes should not have been paid. For another example, if the Board understands the term "compounding" to refer narrowly to the practice of custom-mixing drugs pursuant to a particular prescription for an individual patient (as it is typically understood), that may tend to show that McKesson deliberately misled regulators about its practice, in which it harvested overfill from vials to make prefilled syringes in the absence of a prescription or even a patient name.

Omni repeatedly explained this relevance to the Board in meet-and-confer sessions, but the Board mechanically restated its objections based on the official information and deliberative

---

[6] As far as pharmacies (which the Board *does* oversee) are concerned, the Subpoena Requests are not overbroad for reasons discussed above: The Board is well equipped to identify the pharmacies most likely to have engaged in harvesting overfill and creating and distributing prefilled syringes, even if it cannot promise to identify ***all*** such pharmacies.

process privileges, the work product doctrine, and overbreadth and burden. Those objections are misplaced for the reasons explained above. The deliberative process privilege is particularly incongruous as applied to these requests because the "working law exception" to the deliberative process privilege "requir[es] disclosure of 'opinions and interpretations which embody the agency's effective law and policy' and 'have the force and effect of law.'" *ACLU of N. Cal.*, 880 F.3d at 490 (quoting *Sears Roebuck*, 421 U.S. at 153). "The distinction rests on the consideration that 'the public is vitally concerned with the reasons which . . . suppl[ied] the basis for an agency policy actually adopted,' and is consistent with the 'strong congressional aversion to secret agency law . . . .'" *Id.* (quoting *Sears Roebuck*, 421 U.S. at 152). Omni's interest in the Board's understanding of the law—in other words, the Board's policy and guidance and the documents that support and explain its policy and guidance—is no idle concern.

For that reason, the Board's objection "to the extent that [the Subpoena] seeks the Board to act as an unpaid legal expert witness" is perplexing. Ex. 5 at 6. Omni does not ask for the Board's legal expertise, nor for the Board "to identify those laws, state and federal, applicable to this lawsuit," as it stated in its objections. Ex. 5 at 6. Omni knows what laws are applicable to the lawsuit: It has asked the Board, consistent with well-established case law, for already-existing documents that provide a written explanation of how relevant laws are interpreted and enforced by the agency in California that is responsible for interpreting and enforcing them.

The Board is a policymaking body; it develops, proposes, and publishes its "understanding of the law" as an integral part of its mission.[7] It of course possesses documents stating and explaining its "understanding of the Governing Laws" (Ex. 5 at 6), likely including policy memoranda, guidance documents, circulars, newsletters, and direct communications among staff and with regulated entities regarding regulatory positions, enforcement priorities, and the like.

---

[7] State of California Dep't of Consumer Affairs, Board of Pharmacy, *Mission Statement*, https://www.pharmacy.ca.gov/about/mission_statement.shtml#:~:text=The%20Board%20of%20Pharmacy%20protects,legislation%2C%20regulation%2C%20and%20enforcement (last visited Mar. 24, 2021); State of California Dep't of Consumer Affairs, Board of Pharmacy, *Pending Regulations*, https://www.pharmacy.ca.gov/laws_regs/pending_regs.shtml (last visited Mar. 24, 2021).

Similarly, despite its objection to the contrary (*see* Ex. 5 at 7), the Board surely possesses institutional factual knowledge regarding safety and efficacy of pharmacy practices. The Board finds facts not only in service of developing and proposing policy; it also routinely issues publications and reports in keeping with its mission to "educat[e]" and "communicat[e]" with the public.[8] Regardless, if the Board truly does not possess documents "relating to the safety and efficacy of Pre-Filled Syringes," then there will be nothing to produce and no harm done.

## IV. CONCLUSION

For the reasons stated above, Omni respectfully moves the Court for an Order compelling the Board to fully comply with the Subpoena.

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

Dated: March 24, 2021

By: */s/ Sean P. Rodriguez*

SEAN P. RODRIGUEZ
Sean P. Rodriguez (SBN 262437)
srodriguez@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

George F. Carpinello (*pro hac vice* forthcoming)
gcarpinello@bsfllp.com
30 South Pearl Street, 11th Floor
Albany, New York 12207
Phone: (518) 434-0600
Fax: (518) 434-0665

*Counsel for Qui Tam Plaintiff-Relator*
Omni Healthcare Inc.

[8] State of California Dep't of Consumer Affairs, Board of Pharmacy, *Mission Statement*, https://www.pharmacy.ca.gov/about/mission_statement.shtml#:~:text=The%20Board%20of%20Pharmacy%20protects,legislation%2C%20regulation%2C%20and%20enforcement (last visited Mar. 24, 2021); State of California Dep't of Consumer Affairs, Board of Pharmacy, *Publications & Reports*, https://www.pharmacy.ca.gov/publications/index.shtml (last visited Mar. 24, 2021).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on March 24, 2021, I filed the foregoing and accompanying documents with the Clerk of Court and caused them to be served on all counsel of record by email at the following addresses:

Molly E. Selway
Nicole R. Trama
Office of the Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101-3375
Molly.Selway@doj.ca.gov
Nicole.Trama@doj.ca.gov

Anthony V. Pane
Eileen M. Smiley
Department of Consumer Affairs
1625 N. Market Blvd.
Sacramento, CA 95834-1924
Anthony.Pane@dca.ca.gov
Eileen.Smiley@dca.ca.gov

Ethan M. Posner
Michael M. Maya
Christopher M. Denig
Andrew E. Siegel
Covington & Burling LLP
One City Center
850 Tenth Street NW
Washington, DC 20001
EPosner@cov.com
MMaya@cov.com
CDenig@cov.com
ASiegel@cov.com

Deborah B. Zwany
Matthew Silverman
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
Deborah.Zwany@usdoj.gov
Matthew.Silverman@usdoj.gov

Courtney R. Rockett
Matthew D. Levitt
Mintz, Levin, Cohn, Ferris,
Glovsky, and Popeo, P.C.
Chrysler Building
666 Third Avenue
New York, NY 10017
CRockett@mintz.com
MDLevitt@mintz.com

*/s/ Sean P. Rodriguez*
Sean P. Rodriguez